No. 20-366
_____
_____

IN THE SUPREME COURT OF THE UNITED STATES
_____

DONALD J. TRUMP, PRESIDENT OF THE UNITED STATES, ET AL.,
APPELLANTS

v.

STATE OF NEW YORK, ET AL.
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

APPELLANTS' SUPPLEMENTAL BRIEF
_____

On September 22, 2020, the government filed a jurisdictional statement on appeal from the judgment of the United States District Court for the Southern District of New York entered on September 10, 2020. J.S. App. 105a-107a. Pursuant to Rule 18.10 of this Court, the government respectfully submits this supplemental brief to notify the Court of recent factual developments related to the appeal and the government's request for expedited relief.

1. The judgment on appeal bars the Secretary from including certain information requested by the President in a report concerning the enumeration of the population for purposes of apportionment of Representatives; the report has a statutory deadline of December 31, 2020. See J.S. App. 106a; 13 U.S.C.

141(b). The President, in turn, has a statutory deadline within a week of when the new Congress convenes to provide a statement to Congress with the apportionment (currently, that deadline would be Sunday, January 10, 2021). See J.S. App. 8a-9a; 2 U.S.C. 2a(a).*

In the jurisdictional statement and an accompanying motion to expedite, the government explained that, absent some form of expedited relief from the judgment, the Secretary and the President will be forced to make reports by the statutory deadlines that do not reflect the President's important policy decision concerning the apportionment. See J.S. 11; Mot. for Expedited Consideration 5-6. This Court granted in part expedited consideration of the jurisdictional statement. Order (Sept. 30, 2020).

2. On September 24, 2020, in separate litigation, a district court in California preliminarily enjoined the government from ending census field operations by the government's target date of September 30, and from complying with the December 31 statutory deadline. See 9/24/20 Order, National Urban League v. Ross, No. 20-cv-5799 (N.D. Cal.) (Doc. No. 208). The court later clarified that its injunction requires field operations to

---

* Congress must assemble "at noon on the 3d day of January, unless they shall by law appoint a different day." U.S. Const. Amend. XX, § 2. In years where January 3 falls on a Sunday, as it will in 2021, Congress has often postponed the convening day. See, e.g., Pub. L. No. 114-108, 129 Stat. 224 (2015) (providing for a convening on Monday, January 4, 2016); Pub. L. No. 111-121, 123 Stat. 3479 (2009) (providing for a convening on Tuesday, January 5, 2010).

3

continue until October 31.  See 10/1/20 Clarification Order, National Urban League, supra (Doc. No. 288).  The government has sought a stay of that injunction in the court of appeals, see No. 12-16868 (9th Cir.), and intends to seek a stay from this Court if necessary.

3.  Since the government filed its jurisdictional statement in this case on September 22, the Census Bureau has continued to monitor and update the enormous and complex set of tasks needed to conduct and ultimately conclude the 2020 decennial census -- including under the constraints imposed by the California injunction.  On September 28, the Secretary announced a contingent target date of October 5 for ending field operations, in the event that injunction were stayed or vacated.  See Press Release, United States Census Bureau, 2020 Census Update (Sept. 28, 2020), https://go.usa.gov/xGf58.  That revised target date was intended to allow additional time for field operations to achieve higher completion rates, while still ensuring that the Secretary could provide a Section 141(b) report to the President by the statutory deadline of December 31.

As relevant here, however, the Bureau anticipated that under the October 5 target date, the Section 141(b) report likely would be incomplete in one respect.  The Bureau concluded that although it likely could complete the tabulations under the Residence Criteria for the report by the statutory deadline, it would have

4

to shift some processing steps required for fully implementing the additional tabulations requested by the President's Memorandum for that report until after December 31.  In particular, as explained in a declaration from the Associate Director of Decennial Census Programs filed in the California litigation, the Bureau has developed an "updated post-processing schedule" that shows how it "might close data collection on October 5, 2020 and still produce apportionment counts before the statutory deadline."  10/1/20 Fontenot Decl. 3, National Urban League, supra (Doc. No. 284-1).  Specifically, the Bureau

> identified a modification to the post processing schedule that would still allow the steps necessary to ensure data integrity to be completed by December 31, 2020 and submit the required report by that date.  Certain processing steps necessary to fully implement the Presidential Memorandum dated July 21, 2020 will not be completed until after December 31, 2020.  The Census Bureau will continue to evaluate if there are methods to streamline any of these processes.

Id. at 8.

A separate email from the Deputy Director of the Bureau to the Secretary on September 28, 2020, also produced in the California litigation, explains that the Bureau must "finish field work on 10/5 if we are to have enough time (and assuming all goes well) to finish the processing of the resident population, federally affiliated overseas and, if requested, unlawful aliens in ICE Detention Centers by 12/31.  Other [Presidential Memorandum]

5

related outputs would be pushed to 1/11/2021." 9/29/20 Resp. Ex. 1, National Urban League, supra (Doc. No. 256-1).

4. These developments do not change the need for expedited relief here -- i.e., an order setting aside the judgment below no later than the end of the year, or at a minimum before the President's report to Congress is due in early January 2021. If such relief is granted (and the California injunction separately is stayed), the Bureau currently anticipates that, by December 31, it will provide the President with information regarding any "unlawful aliens in ICE Detention Centers" whom the President could, consistent with the discretion delegated to him by law, exclude from the apportionment base, thereby partially implementing his Memorandum. 9/29/20 Resp. Ex. 1, National Urban League, supra (Doc. No. 256-1). In addition, the Bureau currently plans to provide the President with "[o]ther [Presidential Memorandum] related outputs" by Monday, January 11, 2021, and would continue to work on a quicker timetable to implement that aspect of the Memorandum sooner if feasible. Ibid.; see Fontenot Decl. 8, National Urban League, supra (Doc. No. 284-1). The injunction below, however, would prevent the Bureau from complying with the Presidential Memorandum in the Secretary's Section 141(b) report at all. Accordingly, expedited relief remains necessary to ensure the Executive Branch's ability to meet the statutory deadlines for

reporting the enumeration and apportionment while carrying out the President's expressed policy to the maximum extent feasible.

## CONCLUSION

The government respectfully requests that, no later than the end of the year or early January, the Court either summarily reverse or, if it notes or defers consideration of probable jurisdiction and sets this case for plenary consideration, reverse the district court's judgment.

Respectfully submitted.

JEFFREY B. WALL
<u>Acting Solicitor General</u>

OCTOBER 2020